UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 97-078 ML |
| | : | |
| DAVID L. EVANS | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant David L. Evans ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on July 28 and August 4, 2008. At the August 4, 2008, hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of six months to be followed by period of supervised release for thirty months.

**Background**

On December 3, 1997, Defendant pled of guilty before United States District (now Chief) Judge Mary M. Lisi to sixteen counts of wire fraud and one count of impersonating an officer of the United States. Defendant was sentenced on March 6, 1998, to 120 months incarceration and three years supervised release on Counts 2-17 and 36 months incarceration and one year supervised release on Count 24. The sentences were to run concurrently. As a special condition of supervised release Defendant was ordered to

participate in a substance abuse program to be monitored and approved by the Probation Department. Defendant was also ordered to pay restitution in the amount of $140,638.78 and to pay a special assessment of $1,700.00.

Supervised release commenced on November 28, 2007, and was scheduled to expire on November 27, 2010. The conditions of supervision were modified on December 11, 2007, to include a special condition of mental health treatment as approved by the Probation Department. On May 1, 2008, the conditions were again modified to include as a special condition inpatient substance abuse treatment as approved by the Probation Department.

On or about July 17, 2008, U.S. Probation Officer Kathleen M. Hopkins ("U.S.P.O. Hopkins") initiated a Petition for Summons for Offender under Supervision (the "Petition"), alleging that Defendant had violated three conditions of his supervised release. See Petition at 1-2. In response to the Petition, Chief Judge Lisi ordered the issuance of a summons, see id. at 2, and on July 28, 2008, Defendant appeared on the summons before this Magistrate Judge to answer to the Petition, see Docket.

**The Violation**

The Supervised Release Violation Report (the "Violation Report") states that Defendant violated the following conditions of supervision in the manner indicated:

**Condition #7: Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.**

**1.** On or about January 7, 2008, Defendant used opiates as evidenced by the positive urine screen provided by him on that date. A specimen collected on January 7, 2008, was sent to the national laboratory for testing. It was returned on January 11, 2008, with a positive finding for opiates. When confronted,

Defendant admitted to illicit substance abuse in the form of a morphine pill prescribed to his mother following breast cancer surgery. Following requests to produce the prescription or medication bottle, he proffered that the morphine pill may have belonged to his sister.

**2.** During the week prior to April 28, 2008, Defendant used heroin several times as evidenced by his admission on April 28, 2008. As to this violation, after several months of lack of full compliance with treatment efforts and difficulties maintaining sobriety, on April 28, 2008, Defendant admitted to the probation officer that he had used heroin several times the week prior. He agreed with the Probation Office's assessment that residential treatment was the appropriate course of action for his addiction and executed a waiver to modify supervision for this condition.

**Special Condition: Defendant shall participate in an inpatient/ outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether Defendant has reverted to the use of drugs or alcohol.**

On or about July 10, 2008, Defendant was terminated from the Gosnold Residential Treatment Center for noncompliance. Defendant entered the facility on May 6, 2008. On or about July 10, 2008, Gosnold staff received information from peers that Defendant had been using heroin in the house. When asked to submit a urine specimen by staff, he became defensive. Defendant claimed to be unable to submit a specimen at the time. He was directed to remain in the lower office area until such time as he was able to produce a urine specimen. He defied the directive and went upstairs and changed the shorts he had on to long sweat pants. Eventually, after staff discussed the importance of honesty with him, he admitted to using a Suboxone pill at the meeting the night before. He would not disclose where he got the pill. Three hours after the first request for a specimen was

made, Defendant made another attempt to void. While doing so, a staff member observed him attempting to pour the contents of a small bottle into the urine cup. When Defendant realized what the staff member had seen, he quickly dropped the bottle into his sweat pants. Defendant denied he had the bottle, even though the staff member could see it. The staff member retrieved the bottle which Defendant had tied to the drawstring of the sweat pants. Shortly after the incident, a young resident came forward and stated that he had given Defendant a sample after Defendant approached him menacingly demanding one.[1] In essence, the resident, who was drug-free, voided and turned over the urine to Defendant. The young resident advised that he complied out of fear. Based on this incident, Defendant was discharged from Gosnold as a program failure.

**Travel**

On July 18, 2008, Chief Judge Lisi ordered the issuance of a summons for Defendant to appear to answer to the Petition. See Petition at 2. The summons was issued, and Defendant appeared before this Magistrate Judge on July 28, 2008. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defense counsel, Mary S. McElroy ("Ms. McElroy"), requested a continuance and the matter was continued to August 4, 2008. In the meantime, the Government requested Defendant's detention, and the Court granted this request.

At the August 4th hearing Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations contained in the July 17, 2008, Violation Report.

---

[1] At the August 4, 2008, hearing Defendant denied that he had "menacingly demanded" a urine sample from the other resident and also denied that the resident had complied with this demand out of fear. Defendant indicated that he simply had asked his roommate for the specimen and his roommate had complied. The Court, therefore, disregards the facts which Defendant disputes.

This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After hearing from the Government, Ms. McElroy, and Defendant personally regarding what action should be taken in light of this development, the Court stated that it would recommend to Judge Lisi that Defendant's supervised release be revoked. As to the specific sentence, the Court stated that it would make that determination after further reviewing Defendant's presentence report and other documents submitted by the Probation Department.[2]

## Law

### Statutory Provisions

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case the maximum term of supervised release was previously imposed. Therefore, supervised release cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release and require the

---

[2] The Court directed the Probation Department to insure that counsel for the Government and Defendant were provided with Defendant's presentence report and any documents from Gosnold or other treatment facilities.

defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C felony or class D felony or more than one year in any other case. In this case, Defendant was on supervision for a class C felony and a class E felony. Therefore, he may not be required to serve more than two years imprisonment upon revocation for the class C felony and one year for the class E felony.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years for Counts 2-17 and one year for Count 24), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment

exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[3] or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A or B violation, the court shall revoke supervised release. Section 7B1.3(a)(2) provides that upon a finding of a Grace C violation, the Court may revoke or extend supervision or modify the conditions of supervision. In this case, Defendant has committed a Grade C violation, and the statutory maximum term of supervised release has already been imposed. Therefore, the Court may not extend supervision, but may revoke or modify

---

[3] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The second provision which allows an alternative for one-half of the minimum term applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is an outstanding restitution in the amount of $140,638.78.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the

defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years for Counts 2-17 and one year for Count 24. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of VI at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of VI, an imprisonment range of 8 to 14 months is warranted.[4]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Disposition**

**Recommendations By Government**

The Government recommended that Defendant be sentenced to

---

[4] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

twenty-four months imprisonment, the maximum available term of incarceration. In support of this recommendation, the Government stated that Defendant is a danger to the community. It noted that he has in the past preyed upon the elderly and that his lengthy criminal record includes offenses such as breaking and entering and simple assault. The Government additionally argued that Defendant has demonstrated by his conduct that he is not amenable to supervision and that a period of further supervision would be a waste of the Probation Department's resources.

**Defense Counsel's Recommendation**

Defense counsel noted that Defendant was charged with a grade C violation and that the Government's recommendation was above the guideline range. Defense counsel argued that incarceration was not the answer to Defendant's long-standing substance abuse problem and that incarceration would only result in Defendant eventually being released with the same problem he has now. She contended that it is necessary to address the underlying problems which apparently cause Defendant to turn to controlled substances. As evidence that Defendant has yet to receive the needed treatment, defense counsel noted that while he was serving his ten year federal sentence Defendant had sought unsuccessfully to be admitted into the 500 drug treatment program. She also related that Defendant had advised her that he had not received psychiatric or mental health treatment at Gosnold despite requesting it. As an alternative to a sentence of additional incarceration, defense counsel advocated that the Probation Department be ordered to search for another substance abuse treatment facility which would accept Defendant as a client and provide him with both substance abuse and mental health treatment.

**Defendant's Statement**

Defendant was given the opportunity to speak. He stated

that as a youth he had been sexually molested and that the men who had committed the acts of abuse started him on the road to substance abuse by facilitating or encouraging his use of illicit substances. He suggested that this sexual abuse caused or contributed to his current substance abuse problems and that treatment of these problems requires a psychiatric or mental health component. Defendant indicated that he had requested psychiatric or mental health treatment at Gosnold but that it had not been provided to him. He noted that recently he had seen his eleven year old son for the first time in several years and that he did not want to be an absent father like his father was. Lastly, Defendant observed that the Government's recommendation was essentially saying that he should be discarded.

**Court's Recommendation**

The Court finds that the Government's recommendation of twenty-four months incarceration is excessive. It is above the guideline range, and Defendant has not committed any new crimes. While the offenses which resulted in the present term of supervised release were committed against elderly and vulnerable victims, the Court does not see this as a basis for increasing Defendant's punishment for the instant violations which involve dissimilar conduct. Therefore, the Court rejects the Government's recommendation.

The recommendation of defense counsel that the Probation Department be ordered to search for another treatment program for Defendant is similarly unpersuasive. Defendant's conduct in attempting to surreptitiously substitute another resident's urine specimen for his own is a serious matter. It strikes directly at the integrity of the treatment program. Facilities like Gosnold must be drug-free environments, and program participants cannot be permitted to use drugs. To insure that they do not, participants are required to give urine specimens. In order for

this procedure to be effective in preventing and detecting drug use, it is essential that participants not seek to circumvent the testing procedure. If a participant does not suffer significant consequences for attempting to deceive treatment personnel during the collection process, other participants would be tempted to engage in similar ploys. Thus, the consideration of deterrence is a significant factor here, and it causes the Court to conclude that a sentence of incarceration must be recommended.

In determining the length of that sentence, the Court looks initially to the guideline range. Because of Defendant’s criminal history category of VI, the range is 8-14 months. Although deterrence requires imposition of a sentence of incarceration, the Court concludes that Defendant’s high criminal history category results in sentencing range which is greater than that needed to achieve the necessary deterrence. In the Court’s view, a sentence of six months is sufficient to achieve the necessary deterrence and punish Defendant for the violation. In settling on this as the recommended sentence, the Court also takes into consideration that Defendant waived a violation hearing and admitted to the violations. Consistent with this Magistrate Judge’s practice, the recommended sentence of incarceration is slightly less than would have been recommended if Defendant had maintained his denial and insisted on having a violation hearing.

The most difficult question presented by the instant violation is what should be done with regard to the continued supervision of Defendant by the Probation Department. The Court tends to agree with the Government that Defendant has demonstrated that he is not amenable to treatment and that the limited financial resources of the Probation Department could be better utilized on those defendants who truly want to be helped. On the other hand, simply terminating Defendant’s supervision is

not a desirable alternative because Defendant still owes $140,638.78 in restitution. Primarily because of this consideration, the Court concludes that continued supervision of Defendant is necessary. Accordingly, I recommend that Defendant be placed on a period of supervised release for thirty months following completion of his prison sentence and that he be required as a condition of release to make restitution payments.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to six months imprisonment to be followed by term of supervised release for thirty months. As a condition of supervision, I recommend that Defendant be required to make payments on the restitution which he owes.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 11, 2008